IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

EDUARDO GARCIA-PATINO,

    Defendant.

Case No. 17-20038-18-JAR

## MEMORANDUM AND ORDER

Defendant Eduardo Garcia-Patino is charged in a thirty-two-count Superseding Indictment with one count of conspiracy to distribute more than 50 grams of methamphetamine (Count 1), and one count of possession with intent to distribute more than 50 grams of methamphetamine (Count 26). This matter comes before the Court on Defendant's Motion to Suppress (Doc. 138). Defendant moves to suppress evidence seized following a traffic stop on March 31, 2017. The Court held a hearing on Defendant's motion on December 8, 2017, after which the Court took the matter under advisement. Defendant's motion is now fully briefed and the Court is prepared to rule. For the reasons explained below, the Court denies Defendant's motion.

**I.    Factual Background**

On March 31, 2017, Lt. Justin Stopper, a criminal interdiction team lieutenant for the Geary County Sheriff's Office, was patrolling Interstate 70 near mile marker 303. As Lt. Stopper was travelling westbound, he noticed Defendant traveling eastbound in a black Dodge pickup truck. Lt. Stopper testified he could see the road for several hundred yards in this area. Video from Lt. Stopper's car shows a black pickup, followed by Defendant's black Dodge pickup truck. The video shows all but approximately fifteen seconds of Lt. Stopper's

observation of Defendant's vehicle. Lt. Stopper testified that he saw that the lead vehicle was covering up the view of the second (Defendant's) vehicle, and thus he believed the second vehicle was following too closely.

Lt. Stopper continued observing the two vehicles using the "two-second rule" to determine whether the second vehicle was following too closely.[1] When he saw the first vehicle cross a dashed line, he began counting until the second vehicle crossed the same line. Lt. Stopper determined that the interval between the two vehicles was between 1.75 and two seconds. He had not finished counting to two when the second vehicle crossed the dashed line. Lt. Stopper conducted a second two-second rule calculation using a concrete turnaround in the median as a marker. Lt. Stopper again observed that there was less than a two-second interval between the two vehicles. Lt. Stopper testified that traffic was light during his observations. He also testified that conditions were clear and that there was no road construction on that day. Accordingly, Lt. Stopper believed there was no legitimate reason for the vehicles to be traveling so close together, and he decided to initiate a traffic stop.

Lt. Stopper approached a paved crossing in the median, turned left into the crossing in order to access the eastbound lanes, sped up to catch Defendant's truck, and pulled even with his truck in the left lane to check if the driver was wearing a seatbelt. Lt. Stopper decelerated and trailed Defendant's truck for approximately two minutes before activating his lights and stopping the vehicle. Lt. Stopper observed Defendant driving slower than the lead vehicle while Lt.

---

[1] The "two-second rule" is described on the Kansas Highway Patrol's website. Doc. 138, Ex. 1. www.kansashighwaypatrol.org/214/following-too-closely. The rule instructs a driver following another vehicle to pick an object near or above the road, and as the lead vehicle passes the object, the driver should count aloud, "one thousand one, one thousand two." If the driver reaches the object before finishing counting, the driver is following too closely. Doc. 138, Ex. 1. Lt. Stopper testified that the two-second rule is a guideline, not a rule, and that it is one of several factors that he considers in making a traffic stop for a violation of § 8-1523.

2

Stopper was trailing him. Lt. Stopper testified that he did not observe the lead vehicle increase its distance at any time.

Lt. Stopper approached Defendant's truck and informed Defendant that he had stopped him for following too closely behind the truck in front of him. Lt. Stopper completed a Notice to Appear and issued it to Defendant. Lt. Stopper asked Defendant if he could search Defendant's truck, and Defendant consented. While searching the truck, Lt. Stopper found a red duffel bag containing 20 packages of methamphetamine, weighing 10.69 net kilograms with a purity of 99% (+/- 4%).

Lt. Stopper stated in his report that he observed the alleged infraction as he was traveling westbound and while Defendant was travelling eastbound, and that he stopped Defendant for a violation of K.S.A. § 8-1523, which provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Specifically, Lt. Stopper stated that he stopped Defendant for "following the lead pickup at a distance of less than two seconds."[2] Before preparing his report, Lt. Stopper watched the video recording from his vehicle dashboard on a computer, and he used another road marker to calculate the distance of the cars. Using the computer video software and a stopwatch, he determined there was approximately a 1.7 second interval between the cars using this highway marker.

Defendant presented testimony of Steven Christoffersen, a forensic engineering expert who authored a report analyzing the dash camera video taken by Lt. Stopper.[3] Mr. Christoffersen initially used Google Earth imagery and still shots of the dash camera video to determine that the interval between the vehicles was likely approximately two seconds. Mr.

---

[2] Doc. 138 at 2.
[3] Doc. 138, Ex. 2.

3

Christoffersen visited the site of the incident on August 16, 2017 to conduct a detailed roadway documentation and measurement to calculate the speed and distance between the vehicles. He rented a vehicle that was the same make and model as Lt. Stopper's patrol vehicle and mounted a camera on the dashboard of his car in the same position as Lt. Stopper's camera. He also documented the speed of his car using a speedometer and a GPS monitor to match Lt. Stopper's speed. Mr. Christoffersen measured the details of various reference objects, including a bridge, utility poles, and signs, so he could determine the position of the vehicles on the road.

Mr. Christoffersen created a scaled diagram of the roadway that identified the location of various reference objects. He compared the positions of the vehicles in different video frames to determine the vehicles' speeds, and determined that the lead pickup was traveling at 81.4 miles per hour, and Defendant's pickup was traveling at 74.6 miles per hour. Mr. Christoffersen also calculated the separation distance between the cars as 2.14 seconds. Applying an error rate of 4.4%, Mr. Christoffersen determined that the possible range of separation distance was between 2.05 and 2.23 seconds. Mr. Christoffersen testified that variations in the way people count to two, in the style of "one thousand one, one thousand two," may result in a variation of up to one second in the actual elapsed time when two people finish counting to "one thousand two."

Mr. Christoffersen further testified and Lt. Stopper's dashboard camera video showed that the lead truck increased its distance from Defendant's truck as the video progressed. Mr. Christoffersen testified that it was possible the lead vehicle sped up or passed Defendant's pickup, which would explain the difference in the vehicles' speeds. However, nothing in the video suggests the lead vehicle was ever in the left lane. Mr. Christoffersen also testified that it was possible Defendant's vehicle decreased speed because he noticed Lt. Stopper's patrol vehicle.

## II.     Discussion

Defendant moves to suppress the methamphetamine recovered from the truck because Lt. Stopper lacked reasonable suspicion to believe Defendant violated K.S.A. § 8-1523, and thus the traffic stop was executed in violation of the Fourth Amendment.  The Fourth Amendment requires a traffic stop to be "objectively justified" at its inception.[4]  That means a traffic stop must be (1) "based on an observed traffic violation" or (2) based on an officer's "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[5]  "In order to conduct a lawful investigatory stop of a vehicle, the detaining officers must have, based on all the circumstances, 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"[6]  The law requires far less than perfect certainty of a traffic violation before an officer may initiate a stop.[7]  "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."[8]

Lt. Stopper stated to Defendant that he pulled him over for following the lead truck too closely.  Specifically, Lt. Stopper stated in his report that he stopped Defendant for violating K.S.A. § 8-1523 and for following the truck in front of him at an interval of less than two seconds.  Section 8-1523 provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."  The statute takes into consideration the following four variables: speed, following distance, road conditions, and traffic

---

[4]*United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013).

[5]*Id.* (quoting *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009)).

[6]*United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

[7]*United States v. Esquivel-Rios*, 725 F.3d 1231, 1235 (10th Cir. 2013).

[8]*United States v. Arvizu*, 534 U.S. 266, 277 (2002).

conditions.[9] The Tenth Circuit has concluded that an officer's use of the two-second rule may provide the "'minimum level of objective justification' required for reasonable suspicion justifying a traffic stop."[10]

Lt. Stopper testified that he was initially concerned when he saw Defendant's car travelling so closely to the lead truck that his truck was partially obscured from Lt. Stopper's view. Based on this initial concern, Lt. Stopper conducted two calculations of the separation distance between the trucks, and determined that they were traveling at an interval of less than two seconds apart. Lt. Stopper testified that although traffic along that stretch of Interstate 70 could be very heavy at certain times, traffic was light at the time he made his observations. Thus, Lt. Stopper determined there was no reason for the cars to be traveling so closely together. Lt. Stopper also noted that weather conditions were normal, and that the vehicles were traveling at approximately 75 miles per hour, resulting in an average stopping distance of 430 to 490 feet.

Based on these observations, the Court finds Lt. Stopper had reasonable suspicion that Defendant was violating § 8-1523. Not only did Lt. Stopper twice calculate the interval between the trucks and determine they were traveling at an interval of less than two seconds, but he also observed the traffic conditions and the speed of the vehicles in determining that Defendant was following the vehicle in front of him too closely under the circumstances.

Defendant argues Lt. Stopper lacked reasonable suspicion for several reasons. First, he points to Mr. Christoffersen's analysis and finding that the separation of the vehicles was greater than two seconds. Defendant thus argues Lt. Stopper's two-second rule calculation was inaccurate. But the law requires far less than perfect certainty of a traffic violation before an

---

[9]*State v. Moore*, 154 P.3d 1, 7 (Kan. 2007) (citing *United States v. Vercher*, 358 F.3d 1257, 1262 (10th Cir. 2004)).

[10]*Id.* (citing *United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004)).

officer may initiate a stop.[11]  As the Tenth Circuit has instructed, "reasonable suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error."[12] Here, Lt. Stopper conducted two calculations that led him to believe the vehicles were travelling less than two seconds apart, and the video from his dashboard camera demonstrates that his calculations, even if slightly flawed, were objectively reasonable.

Mr. Christoffersen's analysis provided a separation range of 2.05 seconds to 2.23 seconds of following time.  Lt. Stopper testified that he observed a separation interval of less than two seconds (between 1.75 and two seconds), based on his two calculations.  Assuming the accuracy of Mr. Christoffersen's reconstruction and analysis, the fact that Lt. Stopper may have been inaccurate in his perception of the separation interval by up to a quarter of a second does not negate the reasonableness of his two-second rule calculations.  While it would certainly be telling if Lt. Stopper's calculations were significantly inconsistent with Mr. Christoffersen's calculations, here the disparity in Lt. Stopper's calculations and Mr. Christoffersen's calculation is not significant.  Indeed, a mere 0.05 seconds separates the range of Lt. Stopper's calculated observations (1.75 to two seconds) and Mr. Christoffersen's calculated range (2.05 to 2.23 seconds).  Furthermore, the video from Lt. Stopper's dashboard camera further confirms the reasonableness of his calculations.  The Fourth Amendment does not require that Lt. Stopper's two-second rule calculation withstand the rigors of the scientific method, but only that his observations be reasonable.  Here, Lt. Stopper's calculations were objectively reasonable, and thus his observations supported a reasonable suspicion that Defendant was violating § 8-1523.

Second, Defendant argues that this case is distinguishable from those in which the Tenth Circuit and the Kansas Supreme Court have approved of officers' use of the two-second rule as a

---

[11] *Esquivel-Rios*, 725 F.3d at 1235.

[12] *Vercher*, 358 F.3d at 1261 (quoting *United States v. Walraven*, 892 F.2d 972, 974–75 (10th Cir. 1989)).

basis to initiate a traffic stop. Defendant cites three cases that approve of traffic stops based on two-second rule observations where the officers made multiple calculations or sustained observations of ten to fifteen seconds.[13] Defendant also cites *United States v. Vercher*, in which the Tenth Circuit found that a traffic stop was reasonable where the officer observed the cars traveling about twenty-five feet apart, at high speeds and under overcast conditions, and the officer wanted to "get the vehicle stopped to make sure there wasn't going to be an accident because of the [overcast] weather conditions."[14]

Defendant argues these cases stand for the proposition that "[e]xcept where, as in *Vercher*, the apparent violation is so plain that immediate action was taken based on safety concerns, the case law approves stops for sustained violations, which are observed over time or tested multiple times or by multiple means."[15] The Court does not read these cases as creating per se rules requiring a certain number of calculations or various methods of observation before an officer uses the two-second rule as a basis to conduct a traffic stop. But even if the prior cases require an officer to make multiple calculations before making a traffic stop using the two-second rule of thumb, as Defendant suggests, here Lt. Stopper made two calculations before stopping Defendant. Thus, the Court finds Lt. Stopper's use of the two-second rule was consistent with prior case law approving of such use.

Finally, Defendant notes that the intervals between vehicles in prior cases in which courts approved of traffic stops based on two-second rule observations were much closer than the

---

[13] *Moore*, 154 P.3d at 7 (finding traffic stop lawful where officer conducted a two-second rule calculation and estimated the number of car lengths between the vehicles); *Nichols*, 374 F.3d at 965 (finding traffic stop lawful where officer calculated interval three separate times over ten to fifteen seconds); *United States v. Hunter*, 663 F.3d 1136, 1143 (10th Cir. 2011) (approving traffic stop based on officer's determination that car was following semi truck at about a one-second interval on an interstate highway).

[14] 358 F.3d at 1259.

[15] Doc. 138 at 9.

intervals observed here.[16]  The Court, however, is not convinced that an officer's use of the two-second rule is reasonable only if the interval is *significantly* below two seconds.  As Lt. Stopper testified, the total stopping distance of a vehicle traveling at 75 miles per hour can be several hundred feet, and traveling too closely to another vehicle can obstruct the view of a driver.  The Tenth Circuit has endorsed the two-second rule as an appropriate tool for law enforcement to gauge whether a vehicle is following another too closely,[17] and Defendant has presented no authority or evidence to the contrary that suggests an interval of less than two seconds at highway speeds under light traffic conditions is a "reasonable and prudent" distance.[18]  Here, Lt. Stopper made a reasonable determination that the cars were traveling at an interval of less than two seconds, and he used his observations as one factor in deciding to stop Defendant's vehicle for a violation of § 8-1523.  Thus, Lt. Stopper's use of the two-second rule was reasonable.

In sum, the Court finds the traffic stop was justified.  Before stopping Defendant's vehicle for a violation of § 8-1523, Lt. Stopper (1) observed the distance between the two vehicles and saw that the front of Defendant's vehicle was obscured by the lead vehicle; (2) noted that traffic and weather conditions were normal, suggesting there was no reason for the vehicles to be travelling so closely together; and (3) conducted two calculations in which he determined that the interval between the vehicles was less than two seconds.  Although Mr. Christoffersen's analysis suggests Lt. Stopper's calculation may have been inaccurate by up to a quarter of a second, Lt. Stopper's calculations were reasonable.  Based on Lt. Stopper's calculations and his other observations, the Court finds he had reasonable suspicion that

---

[16] *See Moore*, 154 P.3d at 5 (interval timed at 0.72 seconds); *Hunter*, 663 F.3d at 1139 (interval of one second).  Notably, the court in *Nichols* did not state the interval of the vehicles, but simply stated that the officer observed an interval of less than two seconds after conducting three tests with a stopwatch.  *Nichols*, 374 F.3d at 963–65.

[17] *Nichols*, 374 F.3d at 965.

[18] K.S.A. § 8-1523.

Defendant was violating K.S.A. § 8-1523.  Accordingly, the Court denies Defendant's motion to suppress.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Eduardo Garcia-Patino's Motion to Suppress (Doc. 138) is **denied**.

**IT IS SO ORDERED.**

Dated: January 5, 2018

                                           S/ Julie A. Robinson
                                           JULIE A. ROBINSON
                                           CHIEF UNITED STATES DISTRICT JUDGE