# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>**EDUARDO GARCIA-PATINO (18) AND JUAN CARLOS QUINONEZ-LEON (21)**,<br><br>    Defendants. | Case No. 17-20038-DDC |

## MEMORANDUM AND ORDER

This matter is before the court on two Motions to Sever: one by defendant Eduardo Garcia-Patino (Doc. 458) and one by defendant Juan Carlos Quinonez-Leon (Doc. 459). Their motions ask the court to sever the charges against each defendant for separate trials and object to the continued trial date in this case. The two defendants filed their motions about two weeks before the court continued the trial date in this case, on defendant Luis Alberto Quintero-Jimenez's Motion (Doc. 462), until October 22, 2019. *See* Doc. 481 at 2. For reasons explained below, the court denies Mr. Garcia-Patino and Mr. Quinonez-Leon's motions.

**I.    Background**

Mr. Garcia-Patino and Mr. Quinonez-Leon both are charged, with 19 co-defendants, with a conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine. *See* Doc. 98 at 2–3. Also, the government has charged Mr. Garcia-Patino with possessing with intent to distribute more than 50 grams of methamphetamine. *See id.* at 10. On March 21, 2019, the court held a hearing on Mr. Garcia-Patino and Mr. Quinonez-Leon's Motions to Sever (Docs. 458 & 459), as well as Mr. Quintero-Jimenez's Motion to Extend

Motions Deadlines and Trial Date (Doc. 462).  *See* Doc. 481.  After hearing from counsel, the court found that the ends of justice served by allowing the defendants the additional time requested outweighed the best interest of the public and the defendants in a speedy trial.  Specifically, the court noted that Mr. Quintero-Jimenez's appointed counsel had entered the case on January 30, 2019, and thus needed more time to understand and evaluate this complex case.  And, the court concluded that defendants will require time to assess the court's rulings on any pretrial motions.  The court thus granted Mr. Quintero-Jimenez's motion and continued the trial date in this case until October 22, 2019.  During the hearing, the court also excluded the time between March 21, 2019, and October 22, 2019, from the speedy trial clocks for all but two of the co-defendants.  But, the court explained that this excludable period does not apply automatically to Mr. Garcia-Patino and Mr. Quinonez-Leon, who have objected to the continuance granted to their co-defendants.  The court thus addresses the reasonableness of applying this seven-month excludable period to Mr. Garcia-Patino and Mr. Quinonez-Leon in this Order.

**II.      Legal Standard**

Federal Rule of Criminal Procedure 8(b) allows the government to charge two or more defendants in a single indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The Tenth Circuit "construe[s] Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system."  *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997) (citing *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995)).  But, Rule 8(b)'s joinder guidelines are subject to the limitations imposed by Rule 14(a), which provide, as

relevant here: "If the joinder of . . . defendants . . . in an indictment . . . appears to prejudice a defendant . . . the court may sever the defendants' trials." Fed. R. Crim. P. 14(a).

When deciding a motion to sever, the court must weigh any prejudice to the defendant "against the important considerations of economy and expedition in judicial administration." *United States v. Mabry*, 809 F.2d 671, 681 (10th Cir. 1987), *overruled on other grounds by Mathews v. United States*, 485 U.S. 58 (1988). To carry the "'heavy burden'" required to prevail on a severance motion, a "'defendant must demonstrate actual prejudice [from the failure to sever].'" *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (quoting *United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1995)). And, "Rule 14 leaves the determination of risk of prejudice and any remedy for such prejudice to the sound discretion" of district courts. *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1234 (10th Cir. 1997) (citing *Zafiro v. United States*, 506 U.S. 534, 541 (1993)).

### III.   Analysis

Mr. Garcia-Patino and Mr. Quinonez-Leon make similar arguments in their Motions to Sever. In the following sections, the court identifies the governing authorities and applies them to both defendants' arguments.

#### A. Evidentiary Arguments

Mr. Garcia-Patino and Mr. Quinonez-Leon assert that the government will offer evidence that is admissible against their co-defendants only, and that the jury will be unable to set aside that evidence when evaluating the specific charges against Mr. Garcia-Patino and Mr. Quinonez-Leon. The court discusses these arguments in the following three sections.

### 1. Governing case authority

The Tenth Circuit explicitly has held that "'[n]either a mere allegation that [a] defendant would have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" from the evidence . . . against a co-defendant . . . is sufficient to warrant severance.'" *United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992) (quoting *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986)). And, "when sufficient evidence is presented to connect the defendant to the conspiracy charged, his argument that severance is required due to the overwhelming evidence against co-defendants is without merit." *United States v. Espinosa*, 771 F.2d 1382, 1409 (10th Cir. 1985). But, in *Zafiro*, the Supreme Court has recognized, "When many defendants are tried together in a complex case and they have markedly different degrees of culpability, [the] risk of prejudice is heightened." 506 U.S. at 539. "The risk of prejudice will vary with the facts in each case, and . . . [w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary[.]" *Id.* Ordinarily, though, less drastic measures such as limiting instructions will cure the risk of prejudice. *See id.* And, generally, courts "'presume that juries follow [limiting] instructions.'" *United States v. Jones*, 530 F.3d 1292, 1303 (10th Cir. 2008) (quoting *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989)).

The Tenth Circuit repeatedly has recognized that limiting instructions usually suffice to mitigate the risk of prejudice. *See, e.g.*, *Jones*, 530 F.3d at 1303; *United States v. Olsen*, 519 F.3d 1096, 1103 (10th Cir. 2008) (concluding that a trial court's limiting instruction and "repeated[] reminde[rs] [to] both counsel and the jury" of the specific charge against one defendant favored a finding that the defendant was not unduly prejudiced by a joint trial); *United States v. Tucker*, 502 F. App'x 720, 724–25 (10th Cir. 2012) ("Rule 14 . . . leaves the tailoring of

the relief to be granted, if any, to the district court's sound discretion . . . . And the district court here provided such tailored relief in the form of limiting instructions, which were 'sufficient to cure potential prejudice.'" (first quoting *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996); then citing *Zafiro*, 506 U.S. at 540–41)).[1]

### 2. Do Mr. Garcia-Patino's evidentiary arguments justify severance?

Mr. Garcia-Patino argues that the jury "will be unable to separate and appraise the independent evidence against" him. Doc. 458 at 2. Any limiting instructions the court chooses to give the jury, he contends, will not prevent the jury from considering evidence that it should not use to decide the charges against Mr. Garcia-Patino. For support, Mr. Garcia-Patino cites *Bruton v. United States*, 391 U.S. 123 (1968). In that case, the Supreme Court held that "admission of [a co-defendant's] confession in [a] joint trial violated [the] petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126. The Supreme Court concluded that there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt." *Id.* Mr. Garcia-Patino also cites *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), as an example of a case where severance was appropriate. The Ninth Circuit described *Baker* as "one of the lengthiest and costliest trials in this nation's history[,] . . . last[ing] over 16 months,

---

[1] In *Tucker*, the Tenth Circuit explained why the instructions had cured any prejudice the defendant may have sustained:

> Among other things, these instructions directed the jury to separately consider the evidence concerning the distinct counts of the indictment and admonished the jurors to not permit their verdict concerning one count to control their verdict concerning any of the other counts of the indictment. Furthermore, the district court specifically instructed the jury that Mr. Tucker was "not on trial for any act, conduct, or crime not charged in the indictment," thereby effectively minimizing the possibility that the jury might consider the fact of Mr. Tucker's prior felony in its deliberations concerning the drug-related counts.

502 F. App'x at 725 (citations and footnotes omitted).

5

produc[ing] over 30,000 pages of transcripts, and involv[ing] over 250 witnesses and thousands of exhibits presenting evidence [of] over 2,000 narcotics transactions spanning an 11-year period." 10 F.3d at 1386. "Where trials of this magnitude are involved," the Ninth Circuit concluded, "judicial economy will often be better served by severance." *Id.* at 1389.

In response, the government asserts that the court should not sever the charges against Mr. Garcia-Patino because the court has designated this case as complex (*see* Doc. 133), the government estimates the trial will take several weeks, and it may call 55 witness. Severance, the government contends, will require it to try the case three times: once against Mr. Garcia-Patino, once against Mr. Quinonez-Leon, and once against the remaining co-defendants.

The government asserts that it plans to call co-defendants who have agreed to cooperate in its investigation. If the court severs the charges against Mr. Garcia-Patino, the government contends, an additional trial "would increase the risk [the co-defendant witnesses] face." Doc. 461 at 59. Also, a separate trial would increase costs, force the government to expend more resources on the testimony of federal agents and other witnesses, and prompt other defendants to seek severance, the government argues. Responding to Mr. Garcia-Patino's arguments based on *Bruton*, the government asserts that his concerns about his cross-examination and his Confrontation Clause rights are premature. And, the government says, Mr. Garcia-Patino has not identified any specific evidence it will offer that violates *Bruton*'s holding.

The government also contends that it will present evidence at trial showing that a search of Mr. Garcia-Patino's vehicle revealed he was transporting more than 10 kilograms of methamphetamine. It also asserts that, after consensually searching Mr. Garcia-Patino's cell phone, law enforcement officers found text messages showing correspondence with another co-defendant. These messages, the government represents, contained addresses that the government

6

had identified as locations where co-defendants stored drugs or money involved in the conspiracy.

The court is persuaded by the government's arguments for two reasons. First, Mr. Garcia-Patino merely asserts that the jury will be unable to set aside statements from co-defendants and police reports that, he anticipates, the government will introduce and focus only on evidence admissible against him. He forecasts that the court's evidentiary rulings will allow the government to admit evidence prejudicial to him—prejudice that a limiting instruction cannot cure. The Tenth Circuit has held that arguments complaining of this "'spillover effect'" are insufficient to support severance. *See Powell*, 982 F.2d at 1432. The government also has explained its plans to introduce evidence connecting Mr. Garcia-Patino to the charged conspiracy. *See Espinosa*, 771 F.2d at 1409. And, second, Mr. Garcia-Patino doesn't explain how this case—which involves 21 defendants collectively charged with a 32-count Superseding Indictment (Doc. 98) spanning a period of almost 14 months, and an estimated 55 government witnesses—compares to *Baker*'s 16-month trial involving more than 250 witnesses and "2,000 narcotics transactions spanning an 11-year period." 10 F.3d at 1386. Under the Tenth Circuit's standard, Mr. Garcia-Patino has not satisfied his "'heavy burden'" to show "'actual prejudice'" with his arguments. *See Lopez*, 100 F.3d at 119 (quoting *Wacker*, 72 F.3d at 1468). The court thus is unpersuaded by Mr. Garcia-Patino's evidentiary forecasts and denies his severance motion for this reason.

### 3. Do Mr. Quinonez-Leon's evidentiary arguments justify severance?

Mr. Quinonez-Leon's evidentiary arguments mirror those made by Mr. Garcia-Patino. Mr. Quinonez-Leon also cites *Baker*, asserting that, because he is charged only in Count 1 of the Superseding Indictment and in the Forfeiture Allegation, *see* Doc. 98 at 2–3, 13–15, "a separate

7

trial would make sense." Doc. 459 at 2. Also, Mr. Quinonez-Leon relies on *Bruton* and contends that limiting instructions are insufficient to prevent the jury from separating evidence admissible against him and evidence admissible only against his co-defendants.

Unlike its arguments about Mr. Garcia-Patino, the government doesn't discuss the specific evidence it plans to introduce against Mr. Quinonez-Leon. Instead, the government asserts that Mr. Quinonez-Leon's evidentiary concerns are "premature." Doc. 461 at 61. The government recycles its arguments opposing Mr. Garcia-Patino's motion to respond to Mr. Quinonez-Leon's motion, including the following: (1) the government plans to call co-defendants who have agreed to cooperate with the government in its investigation in this case, and, if the court severs the charges against Mr. Quinonez-Leon, an additional trial "would increase the risk [that testifying co-defendant witnesses] face," *see* Doc. 461 at 59; (2) a separate trial would increase costs and force the government to expend more resources on the testimony of federal agents and other witnesses; and (3) Mr. Quinonez-Leon has not identified any specific evidence the government will present that violates *Bruton*'s holding.

The government doesn't provide details about the evidence it plans to present against Mr. Quinonez-Leon. Regardless, Mr. Quinonez-Leon bears the burden to show "'actual prejudice'" when moving to sever. *See Lopez*, 100 F.3d at 119 (quoting *Wacker*, 72 F.3d at 1468). And, like Mr. Garcia-Patino's motion, Mr. Quinonez-Leon's brief motion merely asserts that the jury cannot set aside the evidence against his co-defendants, and that *Baker* supports severance of the conspiracy charge and forfeiture allegation against Mr. Quinonez-Leon. But, as explained above, the Tenth Circuit has rejected Mr. Quinonez-Leon's evidentiary "'spillover effect'" argument. *See Powell*, 982 F.2d at 1432 (quoting *United States v. Hack*, 782 F.2d 862, 870–71 (10th Cir. 1986)). And, like Mr. Garcia-Patino, Mr. Quinonez-Leon doesn't explain why the

court should find *Baker*'s discussion of severance instructive, other than the fact that *Baker* involved a long trial with multiple defendants. The court thus is unpersuaded by Mr. Quinonez-Leon's evidentiary arguments and denies his severance motion for this reason.

### B. Speedy Trial Act Arguments

Mr. Garcia-Patino and Mr. Quinonez-Leon both have invoked their rights under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–74, and have opposed the continued trial date in this case. The court discusses whether it reasonably may apply the excludable period resulting from the continued trial date applied to the rest of the co-defendants to Mr. Garcia-Patino and Mr. Quinonez-Leon's speedy trial clocks.

#### 1. Governing statutory and case authorities

The STA requires that "the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the . . . indictment." 18 U.S.C. § 3161(c)(1). But, "[c]ertain periods of delay, outlined in detail in the STA, are excluded and do not count toward the seventy-day limit." *United States v. Apperson*, 441 F.3d 1162, 1178 (10th Cir. 2006) (citing 18 U.S.C. § 3161(h)(1)–(9)). Among those periods, the STA excludes delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The STA also excludes delays "reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). But, if the government files a superseding indictment charging a criminal defendant with additional offenses, this does not necessarily toll the 70-day speedy trial clock for the original charge. *See Apperson*, 441 F.3d at 1178 (citing *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) ("The filing of a

superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment . . . .")); *United States v. Ray*, 899 F.3d 852, 862 n.4 (10th Cir. 2018) ("'[W]hen the later charge is merely a part of or only "gilds" the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment.'" (quoting *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986) (other citations omitted))).

Also, under 18 U.S.C. § 3161(h)(7), an "exclusion for delay 'attributable to one defendant is applicable to all codefendants.'" *United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004) (quoting *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 915 (10th Cir. 1989), *abrogated on other grounds by Bloate v. United States*, 599 U.S. 196 (2010)). Specifically, § 3161(h)(7) excludes "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." The court must consider "all relevant circumstances" when determining whether an STA exclusion attributable to a codefendant is reasonable. *Vogl*, 374 F.3d at 984 (quoting *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986)).

The Tenth Circuit has identified three factors to guide district courts when considering "all relevant circumstances": (1) "whether the defendant is free on bond"; (2) "whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial'"; and (3) "whether the defendant zealously pursued a speedy trial." *Vogl*, 374 F.3d at 984 (quoting *United States v. Olivo*, 69 F.3d 1057, 1061–62 (10th Cir. 1995)). With respect to the second factor— prosecutorial and judicial efficiency—"[a] single trial is ideal when the government plans to 'recite a single factual history, put on a single array of evidence, and call a single group of witnesses.'" *United States v. Margheim*, 770 F.3d 1312, 1320 (10th Cir. 2014) (quoting *Vogl*,

10

374 F.3d at 984). "The inquiry associated with this aspect of [the court's] analysis is highly fact-sensitive." *Id.* (citing *Vogl*, 374 F.3d at 984).

### 2. Does the continued trial date violate Mr. Garcia-Patino's rights under the Speedy Trial Act?

Mr. Garcia-Patino has asserted that he will not waive his rights under the STA. But, the government argues, prosecutorial efficiency outweighs the other factors the court must consider, such as Mr. Garcia-Patino's pretrial detention. The government also notes that Mr. Garcia-Patino has not explained how the postponed trial date will harm his ability to defend himself.

The government previously charged Mr. Garcia-Patino in a separate case. The charges there included one of the same offenses charged in the Superseding Indictment in this case—possession with intent to distribute methamphetamine. *See* Indictment at 1, *United States v. Garcia-Patino*, No. 17-20016-CM-1 (D. Kan. Apr. 13, 2017). So, the Superseding Indictment (Doc. 98) filed in this case did not toll Mr. Garcia-Patino's speedy trial clock for that charge.

The court's review of the docket in Mr. Garcia-Patino's previous case calculates that 38 of the 70 available days under the STA were consumed. This case has consumed 16 of the available days under the STA. Thus, combined, the two cases have expended 54 total days of the 70 available days under the STA for the possession charge against Mr. Garcia-Patino. This conclusion leaves 16 remaining days until the STA requires the court to begin his trial, unless the court properly may exclude time from his speedy trial clock. Sixteen of the available 70 days has expired under the STA for the conspiracy charge against Mr. Garcia-Patino. So, the newly postponed trial date of October 22, 2019, would exceed the remaining time—without accounting for any properly excludable time—on Mr. Garcia-Patino's speedy trial clock for both charges.

Also, on April 15, 2019, Mr. Garcia-Patino's counsel filed a Second Motion to Withdraw as Counsel. Doc. 498. In it, counsel explains that Mr. Garcia-Patino is dissatisfied with

11

counsel's representation and lacks trust and confidence in counsel's ability to represent him adequately. *See id.* at 1–2. The court held a hearing on this motion on April 18, 2019 (*see* Doc. 501), and granted counsel's Motion to Withdraw.

Applying the Tenth Circuit's factors, the court concludes it is reasonable to delay Mr. Garcia-Patino's trial until October 22, 2019. First, Mr. Garcia-Patino is in custody, which "weighs against tolling the clock" during the continuance the court granted his co-defendants. *See United States v. Thomas*, No. 12-40044-2-JAR, 2012 WL 5384662, at *2 (D. Kan. Nov. 1, 2012). But, on the second factor, the government has charged Mr. Garcia-Patino with conspiring to distribute and possess with intent to distribute more than 50 grams of methamphetamine, as well as possessing more than 50 grams of methamphetamine. Thus, the government contends it "will have to prove a conspiracy existed and the defendants were members, in addition [to] setting forth the details of their individual participation." Doc. 461 at 58. The government has asserted that, if the court severs the charges against Mr. Garcia-Patino, it would have to call the same co-defendants who have agreed to cooperate with the government in its investigation in this case, as well as the same federal agents, forensic chemists, and other witnesses. On the final factor, Mr. Garcia-Patino has chosen, as his right, to pursue a variety of motions. They include motions seeking to suppress evidence, to continue deadlines, to change counsel, an interlocutory appeal, medical treatment, and severance. These motions take time to present—and decide—and thus have slowed this case's progress. Also, most recently, Mr. Garcia-Patino has asked the court to replace his appointed counsel with new counsel. The court explained that in the court's judgment, it is unlikely that replacement counsel could prepare adequately for a trial within Mr. Garcia-Patino's current STA deadline. Still, Mr. Garcia-Patino nonetheless advised the court to dismiss his counsel and replace him with a new lawyer who—in effect—would lag behind other

counsel of record for some unknown period of time.  The court thus granted his motion.  To say the least, Mr. Garcia-Patino's new attorney will need time to assess this complex case and Mr. Garcia-Patino's defense.  This process also will slow the progress of this case.

Taken together, two of the three factors the Tenth Circuit considers lead the court to conclude that it is reasonable to exclude from Mr. Garcia-Patino's speedy trial clock the time attributable to the continuance granted his co-defendants.  Thus, because Mr. Garcia-Patino has 16 remaining days on his speedy trial clock for the possession charge against him and 54 remaining days for the conspiracy charge against him, reasonably excluding the time between the motion hearing held on March 21, 2019, and the continued trial date of October 22, 2019, does not violate Mr. Garcia-Patino's rights under the STA.

### 3. Does the continued trial date violate Mr. Quinonez-Leon's rights under the Speedy Trial Act?

The docket reflects that the case against Mr. Quinonez-Leon has consumed 59 of his 70 available days under the STA, leaving 11 days until the STA requires the court to begin his trial.  As with Mr. Garcia-Patino, unless the court properly can exclude time from Mr. Quinonez-Leon's speedy trial clock, the continued trial date of October 22, 2019, would violate Mr. Quinonez-Leon's rights under the STA.

Applying the Tenth Circuit's factors, the court concludes it also is reasonable to delay Mr. Quinonez-Leon's trial until October 22, 2019.  Mr. Quinonez-Leon is in custody, which, as explained above, "weighs against tolling the clock" during the continuance that the court granted his co-defendants.  *See Thomas*, 2012 WL 5384662, at *2.  Second, the government also has charged Mr. Quinonez-Leon with conspiring to distribute and possess with intent to distribute more than 50 grams of methamphetamine.  As with Mr. Garcia-Patino, the government asserts it "will have to prove a conspiracy existed and the defendants were members, in addition [to]

13

setting forth the details of their individual participation." Doc. 461 at 58. If the court severs the charges against Mr. Quinonez-Leon, the government would have to call the same co-defendants who have agreed to cooperate with the government in its investigation in this case, as well as the same federal agents, forensic chemists, and other witnesses. And, third, Mr. Quinonez-Leon also has exercised his right to pursue several pretrial motions, including motions to change counsel and sever the charges against him, as well as a pro se motion for discovery (*see* Docs. 395 & 400). These motions have, to some extent, slowed the progress of this case.

Applying the factors the Tenth Circuit has adopted and considering "all relevant circumstances," *Vogl*, 374 F.3d at 984, the court concludes that excluding time from Mr. Quinonez-Leon's speedy trial clock attributable to the continuance granted his co-defendants is reasonable. Thus, because Mr. Quinonez-Leon has 11 remaining days on his speedy trial clock, reasonably excluding the time between the motion hearing held on March 21, 2019, and the trial date of October 22, 2019, does not violate Mr. Quinonez-Leon's rights under the STA.

## IV. Conclusion

For the reasons explained above, the court denies Mr. Garcia-Patino and Mr. Quinonez-Leon's Motions to Sever (Docs. 458 & 459). The court also concludes that it is reasonable to apply the excludable period from March 21, 2019, until October 22, 2019, to Mr. Garcia-Patino and Mr. Quinonez-Leon's speedy trial clocks. The court thus applies that exclusion to Mr. Garcia-Patino and Mr. Quinones-Leon as well.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Eduardo Garcia-Patino's Motion to Sever (Doc. 458) is denied.

**IT IS FURTHER ORDERED THAT** defendant Juan Carlos Quinonez-Leon's Motion to Sever (Doc. 459) is denied.

**IT IS SO ORDERED.**

**Dated this 23rd day of April, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
