## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-20038-18-DDC |
| EDUARDO GARCÍA-PATIÑO (18), | |
| Defendant. | |

## MEMORANDUM AND ORDER

Before the court is pro se[1] defendant Eduardo García-Patiño's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 958). The government filed a Response to defendant's motion (Doc. 984) and defendant replied (Doc. 996). The court assesses both parties' arguments below and, for reasons explained by this Order, denies Mr. García-Patiño's motion (Doc. 958).

### I.   Factual Background

On November 1, 2019, Mr. García-Patiño pleaded guilty to Count 1 of a Superseding Indictment (Doc. 98), charging that he conspired to distribute more than 50 grams of methamphetamine, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 21 U.S.C. § 846, and Count 26 of the same Superseding Indictment, charging that he possessed with an intent to distribute more than 50 grams of methamphetamine, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. Doc. 618 at 1–2, 5.

---

[1]     Because Mr. García-Patiño filed his motion pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

Before sentencing, the United States Probation Office prepared an Amended Presentence Investigation Report (PSR), using the 2018 edition of the United States Sentencing Commission Guidelines Manual ("U.S.S.G." or "the Guidelines").  Doc. 791 at 17 (PSR ¶ 55).  Because Mr. García-Patiño had conspired to distribute and possessed with intent to distribute more than 50 grams of methamphetamine, the PSR applied a base offense level of 38 under U.S.S.G. § 2D1.1(a)(5) and (c)(1).  *Id.* (PSR ¶ 56).  The PSR applied a two-level reduction under U.S.S.G. § 3E1.1(a) for Mr. García-Patiño's acceptance of responsibility for the offense.  *Id.* at 18 (PSR ¶ 64).  It also applied a two-level enhancement based on importation of methamphetamine under U.S.S.G. § 2D1.1(b)(5).  *Id.* at 17 (PSR ¶ 57).  The reduction and enhancement cancelled one another out, resulting in a total offense level of 38.  *Id.* at 18 (PSR ¶ 65).  This total offense level, combined with Mr. García-Patiño's criminal history category of I, produced a Guidelines' sentencing range of 235 months to 293 months.  *Id.* at 21 (PSR ¶ 87).

Before the sentencing hearing, the government filed one objection to the PSR.  It asserted that Mr. García-Patiño didn't qualify for the acceptance of responsibility reduction.  Doc. 794 at 1–3.  Mr. García-Patiño filed six objections to the PSR.  *Id.* at 3–6.  The first three objected to 1) the importation enhancement, 2) safety valve ineligibility, and 3) ineligibility for a mitigating role adjustment under § 3B1.2.  *Id.*  Mr. García-Patiño also disputed 4) his involvement in some drug deliveries, 5) the source of the drugs, and 6) the drug quantity attributed to him.  *Id.*  On August 5 and 20, 2020 the court conducted Mr. García-Patiño's sentencing hearing.  Doc. 866.  At the hearing, the court overruled the government's objection, and ruled each of Mr. García-Patiño's objections.  *Id.* at 2.  The court then sentenced Mr. García-Patiño to a term of 164 months imprisonment on Counts 1 and 26, to run concurrently, followed by five years of supervised release on Counts 1 and 26 also to run concurrently.  *Id.*; *see also* Doc. 878 at 2–3.

On August 24, 2020, Mr. García-Patiño appealed his conviction to the Tenth Circuit Court of Appeals.  Doc. 871.  Then on November 24, 2020, the Circuit granted Mr. García-Patiño's Motion to Dismiss Appeal.  Doc. 901.  On August 19, 2021, Mr. García-Patiño filed his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 958).  His motion alleges four grounds of ineffective assistance of counsel.  *Id.* at 4–8.  The court considers Mr. García-Patiño's arguments, below.

## II.    Legal Standard

Section 2255 entitles a federal prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]" 28 U.S.C. § 2255(b).  Motions of this kind attack the legality of the prisoner's detention, and "must be filed in the district court that imposed the sentence."  *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citations omitted).  The district court then must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255(b).  A § 2255 petitioner must allege facts that, if proved, would warrant relief from his conviction or sentence.  *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).  A court need not conduct an evidentiary hearing where a petitioner's factual allegations are inherently incredible, where they amount to conclusions instead of assertions of fact, or where they contradict the record.  *See id.*; *see also United States v. Cervantes-Samaniego*, No. 07-20099-JWL, 2012 WL 1788141, at *1, *4 (D. Kan. May 17, 2012) (citations omitted).  If the court finds for the petitioner, "the court shall vacate and set the

judgment aside" and discharge the petitioner, resentence him, or "grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

## III.     Analysis

### A.  Failure to Certify

Before reaching the merits of Mr. García-Patiño's ineffective assistance of counsel arguments, the court first addresses a procedural objection lodged by the government.  The government argues that Mr. García-Patiño's petition is deficient under D. Kan. Rule 9.1(a)(2) and Rule 2 of the Rules Governing Section 2255 Proceedings because Mr. García-Patiño failed to sign his original § 2255 petition.  *See* Doc. 958 at 12 (Samuel García, defendant's brother, signed the petition "because of the ongoing pandemic").  D. Kan. Rule 9.1(a)(2) requires that § 2255 petitions are "in writing, signed, and verified (meaning sworn under penalty of perjury[,]" and Rule 2(b)(5) requires § 2255 petitions are "signed under penalty of perjury by the movant or by a person authorized to sign it for the movant."  The government correctly asserts that the court cannot waive this signature requirement.  *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007); *see also United States v. Hagan*, No. 07-10180-01-WEB, 2011 WL 720808, at *1 (D. Kan. Feb. 22, 2011).

Mr. García-Patiño responds, arguing that he corrected this error by filing a signed copy of his § 2255 petition.  Doc. 996 at 2, 14–25 (attaching a signed copy of his original § 2255 petition to his Reply).  To address a deficient petition, the court may accept a defective motion and require the moving party to submit a corrected motion that conforms to Rule 2(b).  *See Guerrero*, 488 F.3d at 1316 (defendant "should have an opportunity to conform his motion to Rule 2(b)'s procedural requirements" (citing § 2255 Rules, Advisory Committee Notes, 2004 amendments)).  The court concludes that Mr. García-Patiño's signed copy of his § 2255 motion (attached to his

4

Reply brief) addresses the defect in his original motion adequately, satisfying both the local and federal rules. The court thus rejects the government's objection and proceeds to the merits of Mr. García-Patiño's ineffective assistance claims.

### B. Ineffective Assistance of Counsel

In his § 2255 motion, Mr. García-Patiño raises four ineffective assistance of counsel claims. To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This means petitioner first "must show that counsel's performance was deficient." *Id.* This standard requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id.* Second, petitioner "must show that the deficient performance prejudiced the defense." *Id.* This requirement necessitates a showing that counsel's errors "were so serious" that they deprived petitioner of a fair trial. *Id.* To prevail on his ineffective assistance challenge, petitioner must satisfy both of *Strickland*'s prongs. *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006). Failing to prove either one is dispositive. *Id.*

To establish that counsel's performance was deficient under *Strickland*'s first prong, petitioner must demonstrate that his counsel's omissions fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A strong presumption exists, however, "that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Counsel's strategic or tactical decisions are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (citation and internal quotation marks omitted). A petitioner "bears the burden of proving that counsel's

5

representation was unreasonable under prevailing professional norms and that the challenged

action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing

*Strickland*, 466 U.S. at 688–89).  The court must evaluate the reasonableness of counsel's

performance not in hindsight but considering all the circumstances visible from counsel's

perspective when the alleged error was committed.  *Strickland*, 466 U.S. at 689.  And, "[j]udicial

scrutiny of counsel's performance must be highly deferential."  *Id.*

To establish prejudice under *Strickland*'s second prong, a petitioner must show "that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability

is a probability sufficient to undermine confidence in the outcome."  *Id.*  When deciding this

component of the analysis, the court must "focus[ ] on the question whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair."

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).  When the

petitioner was convicted based on a guilty plea, he must show that counsel's deficient

performance "affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59

(1985).  "In other words, in order to satisfy the 'prejudice' requirement, the [petitioner] must

show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."  *Id.*

The court applies *Strickland*'s two requirements to petitioner's four claims, below.  It

concludes on each claim that petitioner has failed to meet at least one *Strickland* prong.

Therefore, he has failed to establish ineffective assistance of counsel.

## 1. Persuading defendant to take plea agreement

Mr. García-Patiño first argues that his counsel rendered ineffective assistance during plea negotiations when he induced Mr. García-Patiño to accept a plea deal without ensuring that Mr. García-Patiño's acceptance was knowing and voluntary. Doc. 958 at 4. He argues that his counsel assured him a guilty plea would guarantee a sentence of 72 to 76 months, and that his counsel never informed him of the 10-year mandatory minimum sentence. *Id.* In response to this argument, the government cites the transcript from the November 1, 2019 change of plea hearing, and it also asserts that defense counsel actually informed Mr. García-Patiño adequately about the 10-year mandatory minimum. Doc. 984 at 11–14 (citing Doc. 890 at 13–15).

During that plea hearing, the court asked Mr. García-Patiño if he understood that if he pleaded guilty to these charges "he [faced] a prison term of . . . at least 10 years in federal prison[.]" Doc. 890 at 12–13. Mr. García-Patiño responded that yes, he understood. *Id.* at 13. The court asked if Mr. García-Patiño had talked to his attorney about the sentencing guidelines, how they worked, and if he understood them. *Id.* at 14. Again, Mr. García-Patiño answered affirmatively. In his reply brief, Mr. García-Patiño asserts that he didn't understand that he faced a mandatory minimum, and instead "answered in the affirmative based on [his] counsel['s] ill advice to plea in order to avoid a mandatory sentence of ten (10) years." Doc. 996 at 3.

Mr. García-Patiño's arguments fail to shoulder his burden under *Strickland*'s first prong. Mr. García-Patiño provides no basis for a finding that his counsel failed to inform him adequately of the 10-year mandatory minimum sentence. Counsel advising his client to plead guilty isn't "completely unreasonable." *Fox*, 200 F.3d at 1296. The record shows that Mr. García-Patiño decided to plead guilty with the explicit understanding that "the law authorize[d] a sentence against [him] of life in prison[,]" and also he acknowledged that he "face[d] a sentence

of *at least* 10 years in prison[.]"  Doc. 890 at 13 (emphasis added).[2]  Mr. García-Patiño signed a

Petition to Enter a Plea of Guilty (Doc. 618) and signed his initials, confirming that his "lawyer

informed [him] that the plea of 'GUILTY' could subject [him] to a mandatory minimum

sentence of not less than 10 years . . . ."  Doc. 618 at 2.  Mr. García-Patiño's lawyer, Mr. Smith,

represented that he worked with Mr. García-Patiño to prepare this written Petition to Enter a Plea

of Guilty, with an interpreter who "read it word-for-word to [Mr. García-Patiño] and [Mr. Smith]

answered any questions that [Mr. García-Patiño] had and explained things to him."  Doc. 890 at

8.  Under oath, Mr. García-Patiño confirmed Mr. Smith's statement on this point.  Doc. 890 at 8–

9.  Petitioner has failed to identify any facts to show that counsel didn't inform him of the

mandatory minimum or the consequences of pleading guilty.  Thus, he hasn't met "the burden of

proving that counsel's representation was unreasonable under prevailing professional norms and

that the challenged action was not sound strategy."  *Kimmelman*, 477 U.S. at 381 (citing

*Strickland*, 466 U.S. at 688–89).  His first claim therefore fails the first *Strickland* prong.

    This claim also fails to establish prejudice under *Strickland*'s second prong.  Mr. García-

Patiño can't show that counsel's failure to inform him of the minimum sentence "affected the

outcome of the plea process" because he can't show that counsel failed to inform him of the

minimum sentence in the first place.  *See Hill*, 474 U.S. at 59.  Mr. García-Patiño participated in

the beginning of a jury trial against him and his codefendants, and then, after meeting with

counsel and discussing the implications of pleading guilty, decided to change his plea to guilty.

*See* Doc. 813, Doc. 814, Doc. 890 at 6–9.  He can't show now "that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have

---

[2]    The court provided an interpreter for Mr. García-Patiño for this hearing.  Doc. 890 at 2.  And Mr. García-Patiño confirmed that he was able to hear and understand the interpreter.  *Id.* at 3.

insisted on going to trial." *See Hill*, 474 U.S. at 59.  Thus, petitioner's first claim fails on both prongs.

### 2. Failure to contest denial of three-level sentencing reduction for pleading guilty

Mr. García-Patiño's second ineffective assistance of counsel claim asserts that his counsel failed to contest that he was entitled to a three-level sentence reduction for acceptance of responsibility.  Doc. 958 at 5.  He argues that once the government objected to this guideline reduction, Doc. 794, his counsel didn't respond to the government's argument, Doc. 958 at 5.  Mr. García-Patiño also argues that his counsel should've informed the government and the court that he wanted to plead guilty earlier than counsel did—in his words, he "had implied [to] counsel to negotiate a favorable sentenced and prevent[ ] trial." Doc. 996 at 6.  Mr. García-Patiño argues that "because [his] counsel had knowledge if [he] timely plea[ded] he was entitled to a [three level reduction instead of two]" he should've informed his client of this possible reduction.  *Id.*

Again, petitioner fails to meet his burden at the first *Strickland* prong.  Assuming, as he alleges, that Mr. García-Patiño instructed his counsel to negotiate a favorable sentence and prevent trial, and also that his counsel failed to do so, still he doesn't demonstrate that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Counsel's negotiations with the government, and his consultation with Mr. García-Patiño about when to plead guilty reflect strategic decisions.  Petitioner hasn't adduced any evidence showing that these strategic decisions were "completely unreasonable" or that they "b[ore] no relationship to a possible defense strategy." *Fox*, 200 F.3d at 1296.

This claim also fails to establish prejudice under the second *Strickland* prong.  Mr. García-Patiño argues that his "[c]ounsel never filed any objections after the government filed [its sentencing memorandum (Doc. 794).]".  Doc. 958 at 5.  But, even if his attorney had contested the government's position on acceptance of responsibility under U.S.S.G. § 3E1.1 (a), Mr. García-Patiño can't show that the sentence imposed would've changed.  In the end, contested or not, the government's argument—opposing any "acceptance of responsibility" sentence reduction—didn't prevail.  During the sentencing hearing, the court considered the government's objection that "the defendant did not manifest responsibility under Guideline Section 3E1.1," and overruled the government's objection.  Doc. 888 at 12–13.  Mr. García-Patiño received a two-level reduction for pleading guilty.

Mr. García-Patiño also argues that had his counsel informed the government and the court of his desire to plead guilty sooner, and avoided trial, the court then would have reduced his sentence by three levels instead of two.  But the facts he asserts don't demonstrate "a reasonable probability" that—assuming his counsel had informed the government of his desire to plead guilty sooner, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Under U.S.S.G. § 3E1.1(a), if "the defendant clearly demonstrates acceptance of responsibility for his offense" the court may "decrease the offense by 2 levels."  The court may decrease the offense level by one additional level under § 3E1.1(b) if defendant qualifies for a decrease under subsection (a), the offense level is 16 or greater, and  "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently[.]"  The Guidelines Commentary instructs,

"[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." U.S.S.G. § 3E1.1 Commentary (citing Pub. L. 108-21, § 401(g)(2)(B)).

In its Sentencing Memorandum (Doc. 794), the government objected to Mr. García-Patiño receiving an acceptance of responsibility role reduction under § 3E1.1(a) for two primary reasons:  One, he didn't plead timely (he pleaded guilty after the trial started, so the government spent time and money preparing for his trial).  Doc. 794 at 2.  Two, in the government's view, Mr. García-Patiño didn't admit truthfully to the conduct comprising the offense of conviction. Had Mr. García-Patiño pleaded guilty before the trial started, he might have nullified the government's first reason.  *Id.*  But, he doesn't present a theory that addresses the government's second reason for opposing this guideline reduction.  The government asserted that Mr. García-Patiño hadn't admitted truthfully to his role in "additional trips to transport drugs."  Doc. 794 at 2.  It presented evidence of these trips in his co-defendant's jury trial.  *Id.*  Thus, the government objected to a two-level reduction.  For Mr. García-Patiño to receive a three-level reduction, not only must the government *not* object to the two-level reduction, it also must file a formal motion supporting the extra level reduction.  Given the government's opposition to any reduction at all, Mr. García-Patiño's argument fails to undermine confidence in the two-level reduction he received.  Even had Mr. García-Patiño pleaded guilty before trial commenced, he can't show "probability sufficient to undermine confidence in the outcome[,]" that the government would have disregarded its belief that he was untruthful about his role in the conspiracy and suggested a three-level reduction.  *See Strickland*, 466 U.S. at 694.  Thus, this claim fails under both prongs of the *Strickland* test.

### 3.   Failure to contest ineligibility for safety valve provision

Next, Mr. García-Patiño argues that his counsel rendered ineffective assistance when he failed to contest the court's decision not to apply the safety valve provision during the sentencing hearing.  Doc. 958 at 7.  To support his safety valve ineffective assistance of counsel argument, Mr. García-Patiño recites the following facts:  "Petitioner during pre-trial proceedings provided truthful information to the government about the conspiracy and other factors.  Counsel knew petitioner, at all times, provided all information pertaining to his participation in the instant offense."  Doc. 958 at 7.

The record indeed shows that defense counsel contended that Mr. García-Patiño "qualifie[d] for [the] safety valve" under "Guideline Section 5C1.2."  Doc. 888 at 6.  And the court addressed this objection in the sentencing hearing.  *Id.* at 6–9.  It found that defendant failed to satisfy the requirement to provide all information and evidence that he had about his offenses of conviction and his conduct that was part of the common scheme.  *Id.* at 6–7.  The court concluded that "[t]o accredit the defendant's statement to the government was truthful, the court would have to conclude that it was a coincidence that defendant's two car retrievals led him coincidentally from California to the two stash houses used by this drug trafficking organization: that finding is not credible."  *Id.* at 8–9.

The government argues that because the court thoroughly discussed the safety valve issue and decided that it didn't apply here, defendant can't show any likelihood of a different result even if his counsel had made additional safety valve provision arguments.  Doc. 984 at 16–17 (citing Doc. 888 at 6–9).  The court agrees.  Even if Mr. García-Patiño's counsel knew that he "provided truth information" and "all information pertaining to his participation[,]" his counsel argued that the court should apply the safety valve provision.  *See* Doc. 958 at 7; *see also* Doc.

888 at 6.  The court considered this argument and declined to adopt the argument and apply that provision.  Doc. 888 at 9.

Mr. García-Patiño's counsel indeed made the argument—that the safety valve should apply—he complains that his counsel failed to make.  If Mr. García-Patiño's ineffective assistance of counsel argument is that his counsel should have argued for the safety valve application more effectively, that's merely a criticism of counsel's strategy.  It's not an example of behavior "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Likewise, because his counsel actually made a safety valve argument, and the court considered and rejected its application, Mr. García-Patiño, without presenting new factual evidence or a legal error, can't show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Thus, this claim fails both prongs of the *Strickland* test.

### 4.  Failure to contest ineligibility for minor role reduction

Finally, Mr. García-Patiño's fourth argument asserts that his counsel failed to contest his role as a minor participant in the conspiracy, rendering ineffective assistance of counsel.  Doc. 958 at 8.  Mr. García-Patiño asserts that because he lacked knowledge that he was transporting drugs and the quantity of drugs transported, his counsel should've argued for a minor participant sentence reduction.  *Id.*

But the record shows that Mr. García-Patiño's attorney indeed argued that the PSR erroneously denied him a mitigating role adjustment under U.S.S.G. § 3B1.2.  Doc. 888 at 9.  The court considered this objection and overruled it.  *Id.* at 9–10.  The court found that defendant had failed to demonstrate that he was substantially less culpable than the average participant in the criminal conduct when it considered evidence that defendant made at least three drug

13

deliveries from California, Colorado, or some other western location within 20 days' time, officers seized 10.58 kilograms of methamphetamine from defendant when they arrested him, and this quantity of methamphetamine wasn't hidden or sealed away from him. *Id.* The court found that this quantity of methamphetamine in defendant's truck supported an inference that he was a trusted participant who served as a recurring courier for major quantities of methamphetamine—all conduct inconsistent with a minimal or minor participant role. *Id.*

For the same reasons his third claim fails both prongs of the *Strickland* test, his fourth claim also fails. Mr. García-Patiño's counsel made the argument he claims his counsel failed to make—that a mitigating role adjustment should apply. The court considered and rejected the argument. So, again, if García-Patiño's ineffective assistance of counsel argument is that his counsel should have made this argument more effectively, that is not behavior "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. His counsel argued for a mitigating role reduction, and the court considered and declined to apply it. Without more, Mr. García-Patiño can't show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In sum, all four of Mr. García-Patiño's ineffective assistance of counsel claims fail.

## IV.    Certificate of Appealability

Finally, Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner. A court may grant a certificate of appealability only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citations and internal quotation marks omitted).

As explained above, Mr. García-Patiño has not mustered a substantial showing that anyone denied him of a constitutional right.  He makes no colorable argument suggesting that his counsel provided ineffective assistance.  The court thus declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Eduardo García-Patiño's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 958) is denied.

**IT IS FURTHER BY THE COURT ORDERED THAT** a certificate of appealability for the ruling on Mr. García-Patiño's § 2255 motion is denied.

**IT IS SO ORDERED.**

**Dated this 9th day of December, 2022, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**